STATE, AT THE RELATION OF JOHN M. RICHARDSON, *vs.* EPHRAIM B. EWING.

1. The amendment to the state constitution, ratified in 1851, making the secretary of state elective, did not create a vacancy in that office. The incumbent continued to hold until his successor was elected pursuant to the law passed under that amendment; but after his successor was thus elected, he ceased to be the officer, although the term for which he was appointed, under the original constitution, had not.expired.

*A. Leonard* and *M. Leslie*, for the relator. The first section of the amendments passed in 1851, abolishes the twenty-first section of the fourth article of the original constitution. The second section of the same amendments creates the office of secretary of state, fixes its tenure and prescribes its duties; and provides that it shall be filled by the people, at such time, and in such manner as shall be provided by law. The act of March 28, 1851, was passed to carry these amendments into effect. It is insisted that, under these amendments and law, the relator became entitled to the office as soon as the result of the election was legally declared, and he had given bond and qualified according to law. Against this construction it is urged that, if it is correct, then there was no secretary between the adoption of the amendments and the election of August, 1852. Several answers to this argument from inconvenience suggest themselves. 1. If this inconvenience were to result, the court could not avoid it. The first section of the amendment *expressly* abolishes the twenty-first section of the original constitution. The whole force of the section is spent in producing. this result. The language is explicit, and the court must give it effect. 2. No such inconvenience results. The original

constitution (article four, section nine,) provides that the executive shall fill vacancies. But if this cannot be considered a vacancy, it is a case that may be provided for by law, (article three, section thirty-two,) and has been provided for in the fifth section of the act of March 3, 1851, before referred to, by which the incumbents in all these offices are expressly continued in office until their successors are qualified. 3. If all this was otherwise, no inconvenience has resulted or can now result from the proposed construction. Mr. Ewing has been in office by color of law, and so there has been a secretary de facto if not de jure, and all his official acts, as such, are valid. The office abolished and the office created in the same breath, may be considered as the same office, within the meaning of this rule of the common law.

GAMBLE, Judge, delivered the opinion of the court.

In this case, leave has been asked to file an information in the nature of a quo warranto against Ephraim B. Ewing, upon the allegation that he unlawfully holds and exercises the office of secretary of state. Upon this application, the parties (both appearing by their counsel) have presented an agreed statement of the facts, showing the grounds upon which Mr. Richardson and Mr. Ewing claim the office of secretary of state, and the questions of law involved in the case have been discussed as they would arise upon an information regularly filed with a plea and demurrer. The pleadings, however, have, since the discussion, been regularly made up by an information by the attorney general, a plea by Mr. Ewing, and a demurrer by the State.

The case presented by the information is the following: Richardson, the relator, was regularly elected secretary of state by the qualified electors, at an election held on the first Monday of August, 1852, in pursuance of an act of the general assembly, approved March 3, 1851, and having received the the certificate of his election from the secretary of state, under

the seal of the state, he took the oath of office and gave the bonds required by law, which bonds were approved by the governor.  He demanded of Ewing the possession of the records and other things appertaining to the office, which Ewing refused to surrender, and he, Ewing, continues to exercise the functions and discharge the duties of the office of secretary of state.

The plea of Mr. Ewing sets up as a defence that, on the seventh day of April, 1849, he was duly appointed secretary of state of the state of Missouri, by the governor, by and with the advice and consent of the senate, and was duly commissioned and qualified, and entered upon the discharge of the duties of said office, which he has ever since continued to discharge ; that his appointment and commission gave him the right to the office for the period of four years from the date of his appointment.

To this plea, a demurrer is filed by the State.  The question to be determined is, whether the term for which Mr. Ewing was originally appointed has been abridged by the amendments to the constitution adopted by the general assembly, at the session which convened on the 30th December, 1850.

1. The clause in the original constitution, which created the office of secretary of state, is in these words :  " There shall be a secretary of state, whom the governor, by and with the advice and consent of the senate, shall appoint.   He shall hold his office for four years, unless sooner removed on impeachment. He shall keep a register of all the official acts and proceedings of the governor, and, when necessary, shall attest them ; and he shall lay the same, together with all papers relative thereto, before either house of the general assembly, whenever required so to do, and shall perform such other duties as may be enjoined on him by law."   Under this clause of the constitution, which is the twenty-first section of article four, Mr. Ewing was appointed.   The amendment to the constitution is in these words :

§1. The twenty-first section of the fourth article of the constitution of the state of Missouri be and the same is hereby abolished.

§2. There shall be a secretary of state, who shall be elected by the qualified voters of this state, at such time and in such manner as shall be provided by law ; he shall hold his office for four years, unless sooner removed by an impeachment. He shall keep a register of the official acts of the governor, &c. The remainder of this section is in the same words with the clause in the original constitution, which is abolished.

The first impression made by reading this amendment is, that the office created by the original constitution is abolished by abolishing the clause under which it existed ; but an attentive examination of the whole amendment will satisfy the mind, that such is not its effect. The two clauses or sections constitute but one amendment. It was not the intention of the general assembly, which proposed the amendment, that the first clause or section abolishing the twenty-first section of the fourth article of the original constitution should be ratified and adopted by the subsequent general assembly as a complete amendment in itself, so as to strike out the section of the constitution and destroy the office of secretary of state entirely, if the second section should not be adopted ; but it stood as one proposition, which, in language other than that employed by the general assembly, was a proposition to strike from the original constitution the twenty-first section of the fourth article, and insert in lieu of it the second clause or section of the amendment. The whole amendment being ratified, the two clauses went into force together, and the second clause took its place in the constitution as the provision under which the office of secretary of state was to continue. Under it, the duty was imposed upon the general assembly to provide for the election of a secretary by the voters of the state ; and when such provision was made and a person was duly elected to the office, then there would be a secretary of state elected, as the constitution required. In

the mean time, before such election, the office existed, and the then present incumbent was not disturbed in his right to it by the terms of the amendment. The office under the amendment, is the same office that existed before. As the amendment contemplated legislation for the purpose of electing a person to hold the office, and as the time at which such election should be held was left entirely to the discretion of the legislature, it would be a forced construction of the amendment to make it continue the office in being, and still render it vacant. It may be admitted that, after the amendment was adopted, the clause in the original constitution ceased to have any operation, and had no effect either upon the office or the rights of the officer. Still the amendment is to be regarded as having been adopted with reference to the actual condition of things existing at its adoption. The office then existed, and it was enjoyed by an officer regularly appointed. The amendment continued the existence of the office, and proposed that, at a future time, it should be filled by the election of an officer. It is but a reasonable interpretation of the amendment, to say that, by implication from its own terms, it continued the incumbent in office until a secretary should be elected under the amendment. It speaks in the future ; " there shall be a secretary of state, who shall be elected." Until such secretary is elected, it is implied that the officer in possession of the office shall continue to possess it. But if the amendment had the effect of rendering the office vacant and terminating Mr. Ewing's right to it, his right would be continued by the act of the 3d March, 1851. If the position be correct, that the amendment, by striking out the section of the original constitution left the person then in office without any right to it, under the constitution, it is clear that no provision was made for any other person to hold it, until a person should be elected under a law to be enacted by the general assembly. Between the adoption of the amendment and the election of a secretary, there would be no provision for the discharge of the duties of the office, and there is no clause of the constitution prohibiting the passage of a law to fill the office

until a secretary should be elected. Accordingly, in the fifth section of the act of 3d March, 1851, we find these words at the conclusion of the section : '' and the incumbents of any of the offices aforesaid shall hold their office until their successors shall be elected and qualified.'' Session Acts, 214. Although this language is used in a section, the main object of which was to provide for the case of a tie vote at the election, it will be seen that the words quoted were intended to have a general operation on the rights of the then incumbents in the different offices of secretary of state, auditor, treasurer, attorney general, and register of lands. It was the design of the legislature to continue all the incumbents in these offices until the election of their successors, and this design was consistent with the constitution.

But while it is thus held that Mr. Ewing was continued in office, after the passage of the amendment, it is clear that, neither under the amendment nor the law, could he hold the office after his successor was elected and qualified. The amendment struck the twenty-first section of the fourth article from the constitution, and his right to the office must depend upon the amendment and the subsequent act. These, certainly, did not preserve his right beyond the time that a successor should be elected and qualified under the requirement of the amended constitution. The amendment commanded that there should be a secretary elected, and that the general assembly should provide by law for such election. When such provision was made, and a secretary was elected, the command was obeyed, and the individual chosen was the constitutional secretary, entitled to the office for four years from his election.

This construction gives to Mr. Richardson the right to the office from the time of his election, prevents any interregnum, preserves the government from the confusion that would otherwise be introduced into its affairs, and gives effect to the intention of the people and the general assembly. The judgment of ouster will be entered against Mr. Ewing.