(January 28, 1897.)

## HAYS v. HAYS.

[47 Pac. 732.]

CONSTITUTIONAL LAW.—A substantial compliance with the provisions of sections 1 and 2, article 20, of the constitution of Idaho, in the matter of proposing amendments to the constitution, and submitting them to the people for ratification, is sufficient.

AMENDMENTS TO CONSTITUTION, HOW PROPOSED.—Under the provisions of section 1, article 20, of the constitution, amendments may be proposed by the legislature by joint resolution.

SAME—LEGISLATURE NOT GOVERNED BY SECTION 15, ARTICLE 3.—The power of the legislature to propose amendments to the constitution is not governed by the provisions of section 15, article 3, of the constitution.

TITLE OF RESOLUTION.—It is not essential that the subject of a proposed amendment shall be expressed in the title.

SAME.—It is sufficient if such joint resolution clearly designates the section and article of the constitution to be amended.

WHEN AMENDMENT GOES INTO EFFECT.—The amendment to section 18, article 5, of the state constitution, creating the office of prosecuting attorney, does not go into full operation until the close of the term of office for which district attorneys were elected at the general election of 1894.

AMENDMENT NOT SELF-EXECUTING.—Said amendment is not self-executing. It requires legislation to prescribe the duties of the prosecuting attorney; the board of county commissioners to fix his compensation; and the qualified electors to elect such officer at the next general election.

WHEN OFFICERS TAKE POSSESSION OF THEIR OFFICES.—The law prescribes the date on which the county officers so elected shall take possession of their offices, and that is the date said amendment goes into full operation.

WHEN AMENDMENT BECOMES OPERATIVE, HOW DETERMINED.—In determining the time at which a constitutional amendment becomes fully operative, the intention of the people adopting it should be ascertained. This should be done from the context of the amendment, and, in case of doubt, the court should also consider the existing conditions, and the results which would follow, if the amendment was held to have become immediately operative.

(Syllabus by the court.)

Original proceeding in supreme court by writ of mandate.

Henry Z. Johnson, for Plaintiff.

Did the resolution pass the legislature in the manner provided by the constitution? Was it passed in a constitutional

way? Neither the law or the constitution requires that it be passed as a bill; therefore it need not be printed, or read on three several days. (*Nesbit v. People,* 19 Colo. 441, 36 Pac. 223; *State v. Dahl,* 6 N. Dak. 81, 68 N. W. 418; *Julius v. Callshan,* 63 Minn. 154, 65 N. W. 267.) The amendment was sufficiently entered on the journals. (*Oakland Pav. Co. v. Tompkins,* 72 Cal. 5, 1 Am. St. Rep. 17, and note, 12 Pac. 801; *Worman v. Hagan,* 78 Md. 152, 27 Atl. 616; *Prohibitory Amendment Cases,* 24 Kan. 710; cited with approval in *Senate File 31,* 25 Neb. 864, 41 N. W. 987, 988.) But on the point of the regularity of the passage of the joint resolution the enrolled resolution deposited in the office of the Secretary of State is conclusive as to the regularity of all prior proceedings. (*Fields v. Clark,* 143 U. S. 649, 12 Sup. Ct. Rep. 495; *State v. Jones,* 6 Wash. 452, 34 Pac. 201, and cases cited.) The amendment takes effect at once. It completely eliminates the section relating to district attorneys and leaves no authority for their existence whatever. (Cooley's Constitutional Limitations, 5th ed., 75.) Public officers have no proprietary interest in public offices or any right of property in the prospective compensation attached thereto. (*State v. Frizzell,* 31 Minn. 460, 18 N. W. 319; *Crenshaw v. United States,* 134 U. S. 99, 10 Sup. Ct. Rep. 431; *State v. Harris,* 1 N. Dak. 190, 45 N. W. 1101; *Jones v. Shaw,* 15 Tex. 577.)

Hawley & Puckett and John A. Bagley, for Defendant.

Was the resolution passed in a constitutional way? We urged that it was not, for reasons shown in the record herein filed, as follows: 1. The act was presented as a joint resolution and not as a bill; 2. That neither the act itself or the amendments thereto were printed; 3. It was not read on three several days in the Senate prior to the final vote thereon; 4. The motion to suspend the constitution and the rules of the Senate was not voted upon by a yea and nay vote; 5. The amendment was not entered upon the journal of either the Senate or the House; 6. The act as amended did not pass the Senate. Section 15 of article 3, and section 1 of article 20 make it necessary to comply with the above requirements. And these requirements of the constitution are mandatory. (Cooley's

Constitutional Limitations, secs. 88-98, 169, 180.) A joint resolution, in legislative parlance, is to all intents and purposes a "bill" and in all respects is governed by the same rules as bills. (Const., art. 3; Smith's Digest of Rules and Practice, 379; Barclay's Manual, 112; U. S. Const., art. 1, sec. 7; *Ex parte Liddell,* 93 Cal. 633, 29 Pac. 251.) In every other joint resolution in reference to amendments passed by our legislature, the subject matter of the resolution has been expressed in the title. (3d Sess. Laws, 232, 237; 2d Sess. Laws, 224; 1st Sess. Laws, 243; *Ex parte Liddell,* 93 Cal. 633, 29 Pac. 251.) A constitutional amendment does not become operative upon the casting in its favor of the necessary majority of votes, but only after the due promulgation of the result. (3 Am. & Eng. Ency. of Law, 672; *Sewall v. State,* 15 Tex. App. 56; *State v. Morgan City,* 32 La. Ann. 81; *People v. Norton,* 59 Barb. 169; *Real v. People,* 42 N. Y. 270.) A state constitution can only be changed or amended in the mode prescribed by the instrument itself, and every requisition of the constitution in regard thereto must be complied with. (3 Am. & Eng. Ency. of Law, 672; *Collier v. Frierson,* 24 Ala. 100; *Opinion of Judges,* 6 Cush. 573; *In re Constitutional Con.,* 14 R. I. 649; *State v. Timme,* 54 Wis. 318, 11 N. W. 785.) It is a settled principle of law that the incumbent of an office fixed by the constitution, and the term of which is fixed by the constitution, cannot be deprived of his office except by the expiration of his term, or by some other reason pointed out by the constitution itself. (*People v. Dubois,* 23 Ill. 498; *Commonwealth v. Gamble,* 62 Pa. St. 343, 1 Am. Rep. 422; *People v. Bangs,* 24 Ill. 84; *King v. Hunter,* 56 N. C. 603; *State v. Brunst,* 26 Wis. 412, 7 Am. Rep. 84.) Where legislation is necessary to give effect to a constitutional provision, laws that were in existence at the time the new constitution was adopted remain the law until legislation is had to enforce the provisions of the new constitution. (3 Am. & Eng. Ency. of Law, 671, 672, note 5; *Supervisors v. Stout,* 9 W. Va. 703; *Indiana Co. v. Agricultural Soc.,* 85 Pa. St. 357; *Marshall v. Sherman,* 148 N. Y. 9, 51 Am. St. Rep. 654, 42 N. E. 419; *Ewing v. Orvit Min. Co.,* 56 Cal. 649; Supplement, 3 Gray, 681; *State v. Scott,* 9 Ark. 270; *State v. Ewing,* 17 Mo. 515; *State v.*

*Timme,* 54 Wis. 318, 11 N. W. 785; *Lehigh Co. v. Township,* 81 Pa. St. 482; *Gas Co. v. County,* 97 Pa. St. 476; *County of Erie v. City of Erie,* 113 Pa. St. 360, 6 Atl. 136; *Norman v. Cain,* 17 Ky. Law Rep. 492, 31 S. W. 860.) A constitutional provision is not self-executing when such provision, in express language, requires or commands legislation to give it force and effect. (*Cook Co. v. Industrial School,* 8 Am. St. Rep. 415, note; *Public School v. Patten,* 62 Mo. 444; *Ex parte Wall,* 48 Cal. 279, 17 Am. Rep. 425; *Norman v. Cain,* 171 Ky. Law Rep. 492, 31 S. W. 860; *People v. Osborne,* 7 Colo. 605, 4 Pac. 1074; *Board etc. v. Perkins,* 5 Wyo. 166, 38 Pac. 915.)

SULLIVAN, C. J.—This is an application for a writ of mandate to compel the defendant, Charles M. Hays, to deliver to the plaintiff certain records belonging to the office of district attorney of the third judicial district, and to compel the admission of plaintiff to the use and enjoyment of the office of prosecuting attorney for Ada county. The facts on which the application is based are substantially as follows: Under the provisions of section 1, article 20, of the constitution of Idaho, the legislature, at its regular 1895 session, submitted a constitutional amendment to the electors of the state, to be voted on at the general election held in November, 1896. Said amendment was designated as "Senate Joint Resolution No. 5," and is as follows:

"Be it resolved by the legislature of the state of Idaho:

"Section 1. That section 18 of article 5 of the constitution of the state of Idaho, be amended to read as follows: 'Sec. 18. A prosecuting attorney shall be elected for each organized county in the state, by the qualified electors of such county, and shall hold office for the term of two years, and shall perform such duties as may be prescribed by law. He shall be a practicing attorney at law, and a resident and elector of the county for which he is elected. He shall receive as compensation for his services a sum not less than $500 per annum nor more than $1,500 per annum, to be fixed by the board of commissioners of the county at its regular session in July next preceding any general election, and to be paid in quarterly installments out of the county treasury.'

"Sec. 2. The question to be submitted to the electors of the state at the next general election, shall be in form as follows:. 'Shall section 18 of article 5 of the constitution of the state of Idaho be so amended as to abolish the office of district attorney, and create the office of county attorney?'

"Passed the Senate January 29, 1895. Passed the House February 27, 1895. Approved March 5, 1895."

At said general election, as shown by the return of the state board of canvassers, there were 15,055 votes cast on that proposition—11,643 votes for, and 3,612 vote against, said proposed amendment. It also appears that said board of canvassers have not filed a certificate declaring that said amendment had been adopted. The petitioner, or plaintiff, alleges that he was duly appointed prosecuting attorney for Ada county, by the board of county commissioners of said county, on the eleventh day of January, 1897, and that he thereafter duly qualified, as required by the law, to take possession of and hold said office of prosecuting attorney, as created by said amendment. He further alleges that Charles M. Hays, the defendant, was duly elected district attorney for the third judicial district (which district included, as a part thereof, said Ada county), at the general election held in November, 1894; that said Hays thereafter qualified as required by law, and entered upon the discharge of the duties of said office, and that the office of district attorney has, by the adoption of said amendment, been abolished; that, after due demand by the petitioner on the said Charles M. Hays, he refuses to deliver to petitioner the records of the office of district attorney pertaining to said Ada county; and that said Hays unlawfully claims the right to conduct the prosecution for crimes in the courts of said county, and to act as the legal adviser of the board of county commissioners, and excludes petitioner from the use and enjoyment of such rights and office. The defendant appeared, and demurs to the petition, and moves to quash the alternative writ, on the ground that the petition does not state facts sufficient to entitle the petitioner to the relief demanded. The case came on for hearing on said demurrer and motion, on which counsel for defendants contend as follows: 1. That the resolution did not pass the two houses of the legislature in the

manner provided by the constitution; 2. That it is not so entitled as to render it effective for any purpose; 3. That it does not provide for a proper presentation of the amendment to the electors; 4. That it was not properly submitted to the electors at the general election; 5. That it is not in force, never having been promulgated or declared upon by the board of canvassers; 6. That, if the five preceding points are not well taken, the defendant is entitled to hold the office of district attorney until the end of his term, because (1) it was the intention of the legislature, as shown by the resolution itself, to have the amendment take effect in the future; (2) that the legislature could not deprive a duly elected and qualified officer of his office; (3) that the resolution shows the amendment was to be prospective; (4) that it requires legislative action to make it effective.

Under the first point urged by defendant, it is claimed that the amendment to the constitution was presented as a joint resolution, and not as a bill, and for that reason was not properly passed by the legislature. There is no merit in this contention. In proposing an amendment to the constitution it may be done by joint resolution, and in proposing an amendment to the constitution it is not necessary for the legislature to pass a formal "act" or statute. The provisions of section 15, article 3, of the constitution are not applicable to this case. (*Julius v. Callahan,* 63 Minn. 154, 65 N. W. 267; *State v. Dahl,* 6 N. Dak. 81, 68 N. W. 418; *Nesbit v. People,* 19 Colo. 441, 36 Pac. 221.)

The second contention of defendant is that the joint resolution has no title, and he urges that the provisions of section 16, article 3, of the constitution require the resolution to have a proper title. This contention is also without merit. The power of the legislature to propose amendments to the constitution is not governed by the provisions of said section. It is not essential that the subject of a proposed amendment shall be expressed in its title. In *Nesbit v. People, supra,* the court says: "A proposed amendment need not have any title, except as it designates the article of the comstitution to be amended." The opinion in that case is an instructive one, and covers several points in this case.

We have carefully considered the third, fourth and fifth contentions of defendant, and are of the opinion that the points

urged are not well taken. The joint resolution proposing said amendment provided for a proper presentation of said amendment to the electors, and it was properly submitted to them. The state board of canvassers canvassed the votes cast on said proposed amendment, and declared that there were cast for the amendment 11,643 votes, and 3,612 against it. Our attention has not been called to any provision of the statute requiring said board to declare, in terms, whether, in their opinion, said amendment had been adopted or not.

The most important point in the case for determination is the date that said amendment goes into effect or force, for until that time the section amended remains in full force and operation. The amendment does not provide, in express terms, when it shall go into effect. That being true, we look to its terms to ascertain whether, by necessary implication, it can be determined at what time the legislature intended it should go into operation. By an examination of said amendment it will be ascertained that it is not self-executing. It requires legislation to give it force and effect. It provides that the prosecuting attorney shall perform such duties as may be prescribed by law. The legislature is thereby required to prescribe, in due course of legislation, the duties incumbent on such officer, and, until that is done, it is an office without duties. It also provides the method of filling said office, and that is by election by the qualified electors of the county. It does not authorize a special election to be held for the election of such officers. The general election laws of the state provide the time and manner for the election of county officers, of whom the prosecuting attorney is made one; and, under the provisions of those laws, no general election can be held for that purpose prior to November, 1898. The prosecuting attorneys provided for by said amendment cannot be elected until that time. Said amendment does not provide for the filling of said officer prior to the time that it commands it to be filled by election. The question of filling said office was prominently before the legislature when said amendment was formulated and passed as a joint resolution, and it contains no intimation that said office should be filled in any manner, except by the qualified electors of the county, and then not until the next general election after the adoption of said amendment.

Said amendment also provides that the compensation of the prosecuting attorney shall be fixed by the board of county commissioners prior to the election of said officer, the minimum and maximum compensation being fixed by said amendment. It thus specifically provides the manner of filling the office, and by whom and the time when the compensation shall be fixed, and clearly negatives the idea that said office shall be filled prior to the time fixed for fixing the compensation, and also negatives the idea that such compensation could be fixed by any person or body other than the board of county commissioners. From a careful consideration of the provisions of said amendment we are forced to the conclusion that the legislature in proposing, and the people in adopting, said amendment, did not intend that it should go into full operation until the time fixed by law for county officers to qualify and enter upon the discharge of their duties by virtue of their election in November, 1898.

The clear intent of the provisions of said amendment is that the district attorneys should hold their offices for the full period for which they were elected. How very easy for the legislature, in formulating said joint resolution, to have stated that said amendment should go into operation immediately upon its adoption by the people, if they had so intended, and also to have provided for the appointment of a successor to the district attorneys, to fill those offices until the next general election, and also provided for fixing the salaries of such appointees, as well as to prescribe their duties. In cases of this kind, we are admonished by eminent authority to look at the results that would follow if it were held that such amendment became operative as soon as it was ascertained that it received the requisite number of votes to ratify it. If this amendment became operative at the time the canvassing board found that it had received a majority of the votes cast on the proposition, to wit, on the twenty-seventh day of November, 1896, then the office of district attorney was abolished. The several counties of the state would have been without public prosecutors. There would have been no officers in the various counties authorized to perform the many grave (and, to the public, important) duties to be performed in the prosecution of criminal cases, and in other public

matters. The conditions resulting would have caused confusion throughout the state. We cannot believe that the legislature in proposing said amendment, or the people in ratifying it, contemplated or intended such results as must inevitably follow from its becoming operative upon its ratification by the people. It is far more reasonable that the people intended that the old order of things should continue until the new officers had been elected, their duties prescribed by law and their compensation fixed in conformity with the provisions of said amendment.

It is no answer to say that said offices might be filled by appointment, for the amendment provides that they shall be filled by election, and not by appointment, and, until the duties of the office are prescribed by legislation, it is an office without duties, as above stated, and the amendment expressly provides that compensation shall be fixed by the board of county commissioners of the respective counties at their July session next preceding the general election. The provisions of said section clearly negative any intention of permitting the appointment of the first incumbents of such office, and also clearly negative the intention of permitting (let alone authorizing) any person or board whatever to fix the salary of such officer prior to the month of July next preceding the general election to be held in November, 1898.

Our attention has not been called to a single precedent upon all-fours with the points involved in the case at bar, but the following cases touch upon the main point involved: *Opinion of the Justices,* 3 Gray, 601; *State v. Scott,* 9 Ark. 270; *State v. Ewing,* 17 Mo. 515; *State v. Timme,* 54 Wis. 318, 11 N. W. 785; *Lehigh Iron Co. v. Lower Macungie Tp.,* 81 Pa. St. 482. Our conclusion is that the demurrer and motion must be sustained, that the district attorney continue to hold his office until the expiration of the term for which he was elected, and that the writ must be denied; and it is so ordered.

Huston and Quarles, JJ., concur.