(No. 5452.   December 19, 1929.)

IRA B. LANE, Plaintiff, v. FRED E. LUKENS, Secretary of State of the State of Idaho, Defendant.

[283   Pac.   532.]

Hawley & Hawley, Sweeley & Sweeley and Frank L. Stephan, for Plaintiff.

W. D. Gillis, Attorney General, and Leon M. Fisk, Fred J. Babcock, S. E. Blaine and A. C. Cordon, Assistant Attorneys General, for Defendant.

T. BAILEY LEE, J.—Petition of Ira B. Lane for a writ of *mandamus* against Fred E. Lukens, Secretary of State, compelling him to call a general election as provided by chap. 13 of the 1929 Idaho Session Laws.

The defendant has filed a general demurrer. In support thereof, he invokes the constitutional amendment to sec. 1, art. 4, of the Idaho Constitution, claimed by him to have been adopted by the electorate on the sixth day of November, 1928. Petitioner attacks the validity of such amendment, contending that the question as submitted to the voters was misleading, ambiguous and directly in conflict with the amendment proposed; that the amendment had not been entered on the journals of both houses of the legislature, and that it was not retroactive.

House Joint Resolution No. 8., adopted by the 19th session of the Idaho legislature, read as follows:

"HOUSE JOINT RESOLUTION No. 8.

"A Joint Resolution Proposing Amendment of Section 1 of Article IV of the Constitution, and Submitting to the Electors of the State for Their Approval or Rejection the Question of Whether Said Section Shall be so Amended That the Term of Office of the Governor, Lieutenant-Governor, Secretary of State, State Auditor, State Treasurer, Attorney General, and Superintendent of Public Instruction, Shall be Four Years Instead of Two.

"Be It Resolved by the Legislature of the State of Idaho:

"SECTION 1. That Section 1 of Article IV of the Constitution be amended to read as follows:

" 'Section 1. The executive department shall consist of a Governor, Lieutenant Governor, Secretary of State, State Auditor, State Treasurer, Attorney General and Superintendent of Public Instruction, each of whom shall hold his office for four years beginning on the first Monday in January next after his election, except as otherwise provided in this constitution. The officers of the executive department, excepting the Lieutenant Governor, shall during their terms of office, reside at the seat of government, where they shall keep the public records, books and papers. They shall perform such duties as are prescribed by this constitution and as may be prescribed by law.'

"SEC. 2. The question to be submitted to the electors of the State of Idaho at the next general election shall be as follows:

" 'Shall Section 1 of Article IV of the Constitution be amended to provide that the term of office of Governor, Lieutenant Governor, Secretary of State, State Auditor, State Treasurer, Attorney General and Superintendent of Public Instruction shall be limited to four years?'

"SEC. 3. The Secretary of State is hereby directed to publish this proposed constitutional amendment for six consecutive weeks prior to the next general election in one newspaper of general circulation published in each county of the State."

From the above, it will be seen that, whereas the proposed amendment expressly fixed the term of office as a period of four years, thereby extending it from the then period of two years to four, the question submitted the individual voter was whether or not the term should be merely limited to that duration, leaving the actual time of incumbency undetermined. The query immediately arising is addressed to the significance of the language that confronted the voter, on the ballot. Could he, by attributing to the words employed their usual meaning in common parlance, have understood other than that a successful candidate might, under such amendment, hold office for one, two,

three or four years? As far as the average man is concerned, including the writer of this opinion, the answer is in the negative.

It may be said that the voter already knew that the term of office was two years. But how, in sooth, could he know that, after the adoption of an amendment limiting an unnamed term to four years there would be retained in the constitution any mention of two years at all? On the contrary, the former constitutional provision as to terms of office would have been wholly abandoned; and in its stead would have appeared a declaration that the term of certain offices "shall be limited to four years."

Defendant endeavors to meet the situation by urging that, inasmuch as the amendment had been duly published, the voter was given sufficient notice; and whatever ambiguity there might have been suggested by the question propounded by the ballot had been cured thereby. Notwithstanding the opinion expressed by various courts, notably, that of Washington in *Cudihee v. Phelps*, 76 Wash. 314, 136 Pac. 367, that the publishing of the proposed amendment serves as notice to the people, it will be found that in nearly all these cases it is uniformly held that the question on the ballot must refer to such amendment in general terms. This particular case cites as authority *State ex rel. Thompson v. Winnett*, 78 Neb. 379, 15 Ann. Cas. 781, 110 N. W. 1113, 1118, 10 L. R. A., N. S., 149, wherein the court cogently states the crux of the matter as follows:

"Enough was printed on the ballot to identify the amendment referred to and to show its *character and purpose*, and that is all that is required." (Italics ours.)

Section 1 of art. 20 of the Idaho Constitution, with respect to the adoption of amendments, among other things provides:

" . . . . and it shall be the duty of the legislature to submit such amendment or amendments to the electors of the state at the next general election, and cause the same to be published for at least six consecutive weeks, prior to said election."

From the language employed, it is clear that the publication constitutes no part of the submission, but is an act mandatorily directed as a prerequisite of such submission. The submission is to be made at the ensuing election by immediate contact with the voter; and, under the law, the only method of submitting a public question to the individual voter is by proper ballot advising him directly or by general reference to the actual issue to be determined. And, how was the amendment definitely fixing the term of office at four years, in this instance, submitted? Simply by a question in conflict with an idea of fixation, and diametrically opposed to any idea of extension, such as from a point certain to one more remote.

The word "limit" in its very inception carried the idea of "extreme boundary" that it carries now. As the ancient "cowpath" of the Latins, it signified a res "quam ultra, non," "beyond which, not," a definition not yet improved on. The "character and purpose" of the amendment proposed was fundamentally antagonistic to the "character and purpose" indicated by the printed question. The provisions of article 20 are mandatory. (*McBee v. Brady*, 15 Ida. 761, 100 Pac. 97, 104.) In that case, Justice Stewart said:

"The questions submitted should be the same questions proposed as the amendment or amendments. The Legislature cannot propose one question and submit to the voters another."

That is just what was done here. The amendment is accordingly void. In view of the conclusion reached, it is not deemed necessary to pass upon the merits of the remaining objections urged by petitioner. Writ granted. Costs to petitioner.

Budge, C. J., and Givens, Wm. E. Lee and Varian, JJ., concur.