In re Application of Burt County Public Power
District.
Virgil Lane et al., appellees, v. Burt County Rural
Public Power District, a public corporation,
Appellant.

77 N. W. 2d 773

Filed June 29, 1956. No. 33874.

(1)

*Brown, Crossman, West, Barton & Quinlan, Ellenberger & Pipher,* and *C. A. Sorensen,* for appellant.

*Moodie & Burke* and *H. M. Nicholson,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CHAPPELL, J.

On September 6, 1949, Burt County Public Power District, hereinafter called defendant, filed a petition with the county judge of Burt County seeking to condemn an easement and right-of-way for the construction and maintenance of a 34,000-volt electric transmission line

extending 1 mile on and along the north border of described lands owned by Virgil Lane and Lauren Lane, hereinafter called plaintiffs. On the same date an order providing for appraisal was filed by the county judge which ordered that on September 28, 1949, at 9 a. m., appraisers, to be thereafter appointed and qualified, should appear to qualify and proceed in a body to inspect the premises, hear the parties, assess plaintiffs' damages, and make written report thereof to the county judge to be certified by him and filed of record in the office of the county clerk. On September 22, 1949, the county judge entered an order appointing named appraisers and prescribing the duties to be performed by them. The appraisers were duly served and qualified as such.

The transcript of the proceedings discloses that the written report made by the appraisers awarding plaintiffs $1 as damages, was "Filed Oct 19, 1949" and that thereafter, on October 26, 1949, such report was certified by the county judge under the seal of his office and transmitted by him to the county clerk who filed same of record. Also on that date defendant paid the award to the county judge for the use of plaintiff owners. In the meantime, on October 19, 1949, plaintiffs filed a motion with the county judge to vacate and set aside the award as grossly inadequate and so shocking as to require a reappraisal, but such motion was overruled on November 14, 1949, and on November 15, 1949, plaintiffs' appeal bond was duly filed and approved. Also, on December 7, 1949, the county judge certified that the entire transcript of all the condemnation proceedings was correct, and on that date such transcript was filed in the district court by plaintiffs.

Thereafter, on January 12, 1950, defendant filed a motion in the district court to dismiss plaintiffs' appeal upon the ground that their appeal bond had not been filed within 30 days from October 10, 1949, when defendant alleged the appraisers' report had actually been

filed. However, such motion was never presented to or disposed of by the district court. Rather, on March 4, 1950, counsel for plaintiffs and defendant stipulated that the deposition of the county judge as a witness for defendant might be taken on March 8, 1950, at a stated time and place, without further notice. Such deposition was taken and duly filed in the district court but it was never used either before or in the trial on the merits. Also, on October 23, 1951, the trial court entered an order that no action having been taken in the cause for an extended period, it should be placed on the dismissal docket. However, on December 24, 1951, as requested by plaintiffs, and without objection by defendant, the cause was removed from the dismissal docket and placed on the trial docket. Also, on February 21, 1952, without any objection by defendant, the cause came on for trial to a jury upon the merits, the sole issue being the amount of plaintiffs' damages. Such issue was presented and tried upon the record as reflected by the transcript on appeal, without any new pleadings being filed. After a hearing upon the merits as so presented, whereat both parties adduced evidence, the cause was submitted to the jury on February 22, 1952, for a determination of plaintiffs' damages, and the verdict of the jury awarded plaintiffs $3,800. Thereupon, judgment was rendered upon the verdict for $4,328.83, which included interest at 6 percent from October 26, 1949, the date on which defendant paid the award to the county judge, instead of from September 6, 1949, the date of filing defendant's petition for condemnation. However, plaintiffs have not cross-appealed.

On March 1, 1952, after such trial on the merits with regard to the sole issue of plaintiffs' damages, and after defendant had taken the chance of a favorable verdict without in any manner theretofore presenting or having a hearing in the district court upon its motion to dismiss because plaintiffs' appeal bond had not been timely filed, defendant filed another such motion to dismiss.

That motion also requested the stay of all further proceedings pending determination of an application filed by defendant in the county court seeking to secure a correction of its record to show that the appraisers' report was filed on October 10, 1949, instead of October 19, 1949. On March 1, 1952, defendant also filed a motion to set aside the verdict and judgment thereon and for a new trial, alleging among other things that the district court was without jurisdiction to hear the appeal.

Further, on March 1, 1952, defendant filed an application in the county court to correct its record and issue a supplemental transcript showing that the appraisers' report was filed on October 10, 1949, and not on October 19, 1949, as shown by the certified transcript. Also, on April 2, 1952, theorizing that such application was part of a judicial proceeding, defendant filed a motion in the county court requesting the county judge to disqualify himself from acting in a judicial capacity upon defendant's application to correct the record in the county court.

On April 17, 1952, such motion and application were heard by the county judge, whereat both were overruled and dismissed upon the ground that the county court as such had no jurisdiction over the subject matter and that there was no judicial proceeding pending in the county court. On April 18, 1952, defendant filed in the county court a notice of appeal therefrom, and on April 23, 1952, filed an appeal bond. A certified transcript of such proceedings made by the county judge was filed in the district court on May 8, 1952. Thereafter, on December 20, 1954, defendant filed a motion for order of hearing on its purported appeal from the county court subject to disposition of its motions to dismiss plaintiffs' appeal and its motion for new trial.

Also, on December 20, 1954, over objections of plaintiffs to the reception of any evidence upon the matter involved in defendant's appeal from the county court for the reason that the county court had no jurisdiction

of the subject matter thereof, thus the district court had no jurisdiction, evidence was adduced at length in the district court upon defendant's purported appeal from the county court.

Subsequently, on June 15, 1955, the trial court over-ruled defendant's motion for new trial, and overruled defendant's motions to correct the record of the county court and to dismiss plaintiffs' appeal. Thereafter, on June 23, 1955, defendant filed a supplemental motion for new trial which was overruled on June 29, 1955, whereupon the trial court fixed supersedeas bond which was approved and duly filed by defendant on that date, together with a notice that defendant intended "to appeal the above entitled case to" this court. On that date defendant also deposited a docket fee with the clerk of the district court.

In that complicated situation, defendant in its brief has assigned some 16 alleged errors, divided into two separate parts. The first part assigned in effect that the trial court erred in refusing to dismiss plaintiffs' appeal and terminate the litigation for failure of plaintiffs to timely file an appeal bond as allegedly proved by defendant in its purported appeal from the county court. The second part assigned in effect that the trial court erred during the trial to the jury on the merits in the admission of certain evidence and in giving and failing to give certain instructions. We conclude that the first part of defendant's assignments has no merit, but the second part thereof should be sustained in part, requiring a reversal of the judgment and a remand of the cause for new trial solely upon the question of the amount of plaintiffs' damages.

Concededly, the condemnation proceedings here in-volved were controlled by and must be determined under statutes in effect on September 6, 1949, the time of filing of defendant's condemnation petition. In such respect, section 74-309, R. S. 1943, provided for the appointment of appraisers by the county judge, whose duty it would be

to inspect and view the real estate, hear either party interested with reference to the amount of damages when they are inspecting and viewing such real estate, and thereafter assess the damages which the owner shall sustain, and make report in writing to the county judge, who, after certifying same under his seal of office, shall transmit same to the county clerk for record. If the condemner shall at any time before entering upon the real estate for purposes of construction pay to the county judge for the use of the owner the sum so assessed, it is authorized to construct and maintain its construction across the premises.

In the case at bar, the record discloses that appraisers were duly appointed and qualified, and inspected the premises on September 28, 1949. Their report in writing was affirmatively shown to have been filed with the county judge on October 19, 1949, who duly certified same and transmitted it to the county clerk on October 26, 1949, where it was recorded. Also on that date defendant paid the award to the county judge.

Section 74-311, R. S. 1943, gave either party the right to appeal from such assessment of damages to the district court of the county in which such lands are situated, within 60 days after such assessment. Herein, plaintiffs as landowners appealed from such assessment.

Section 74-312, R. S. 1943, required that the party appealing should, within 30 days after such assessment, enter into an undertaking to be approved by the county judge, conditioned as provided by such section. Herein plaintiffs furnished such bond, duly approved and filed on November 15, 1949. In that regard also, as stated in 5 C. J. S., Appeal and Error, § 1579, p. 462: "In the absence of statutory provisions to the contrary, and provided there is something on which to base it, the general presumption, on appeal, is that all steps necessary to bring the case into the appellate court were regularly and properly taken, and the burden of proving irregularities in taking and perfecting the appeal is on the

party alleging them. Accordingly, presumptions have been indulged on appeal in favor of the * * * filing in time * * * of the appeal bond or undertaking; * * *."

Section 74-313, R. S. 1943, provided that the party appealing should, within 60 days allowed for such appeal, procure and file in the office of the clerk of the district court a certified transcript of all the proceedings of such assessment, including also all papers and files relating to or connected with the assessment appealed from, and the county judge should upon demand make such certified transcript and deliver same to the party appealing. Herein such a transcript was duly certified by the county judge on December 7, 1949, and same was filed on that date in the office of the clerk of the district court.

Section 74-314, R. S. 1943, provided that, upon the filing of such transcript in the district court within 60 days from the date of the filing of the appraisers' assessment appealed from, the appeal should be deemed perfected and completed, and the cause should be docketed by the clerk of the district court, making the owner of the land plaintiff and the condemner defendant. Such section then specifically provided: "The parties shall proceed in all respects in the trial of the cause in the same manner as though the action had been originally instituted in such appellate court."

Speaking of such statutes, this court as early as Mattheis v. Fremont, E. & M. V. R. R. Co., 53 Neb. 681, 74 N. W. 30, said: "It is to be observed that the county court has nothing whatever to do with this proceeding. It is not a proceeding instituted in the county court. The appraisers are not selected by the county court. The summons is not returnable to the county court, and with the report of the appraisers the county court has no concern whatever; and the statute does not even require that a report of the proceedings of the appraisers shall be kept in the county court. The entire proceeding is conducted by the county judge, the sheriff, and the ap-

praisers selected by the former. These constitute a tribunal not to try a civil action pending between the land owner and a railroad company, not to pronounce a judgment, but simply to inquire and report to the county judge what damages the land owner will sustain by reason of the appropriation of his land for the railroad's right of way. The power conferred by the act upon the county judge and the duty required of him by that act are not judicial powers or duties, but purely ministerial powers and duties."

Such authority was cited with approval in In re Application of City of Sidney, 144 Neb. 6, 12 N. W. 2d 104, wherein we said: "The selection of six freeholders by the county judge as required by the applicable statute did not constitute the proceeding a matter instituted and pending in the county court. The power conferred by the act upon the county judge and the duty required of him by that act are not judicial powers or duties, but purely ministerial acts."

By analogy from such authorities, no part of the condemnation proceedings at bar was ever instituted in the county court as such. It has not in the past been pending in that court, and if the result of the proceedings could in any sense be regarded as judgment or an order made, then the county court as such did not render such judgment or make such order. Contrary to defendant's contention, its application filed in the county court purportedly to correct the county court's record, did not have the effect of lodging a civil action in that court or becoming a part of any judicial proceeding therein. The condemnation proceeding became a judicial proceeding only when it was appealed to the district court. Therefore, defendant's attempted appeal from the county court in support of its motion to dismiss accomplished nothing, since the county court had no jurisdiction of the subject matter, and the statutes make no provision for such appeal.

As early as Jacobson v. Lynn, 54 Neb. 794, 75 N. W.

243, this court held that: "A district court cannot acquire jurisdiction of a cause if the court from which the appeal was taken had no jurisdiction of the subject-matter."

In Scheer v. Kansas-Nebraska Natural Gas Co., 158 Neb. 668, 64 N. W. 2d 333, this court said: "It is a fundamental rule in this state that if new issues other than the assessment of damages are to be raised on appeal in a condemnation proceeding, they must be pleaded. On appeal the proceeding is judicial as distinguished from the administrative proceeding before the county judge. A condemnee is required to raise any and all issues in the district court and, if he does not, he is bound by the rule of res judicata in a collateral attack."

As recently stated in Heppe v. State, 162 Neb. 403, 76 N. W. 2d 255, citing with approval Higgins v. Loup River Public Power Dist., 157 Neb. 652, 61 N. W. 2d 213: "The procedure in the county court contemplates an informal hearing by the appraisers, a view of the lands, no record of the testimony, and a report of damages assessed to be filed subject only to the right of appeal, not to confirmation by the appointing court. It is obvious that the plaintiffs and the intervener could only raise the proposition heretofore contended for by them on appeal to the district court in the condemnation proceedings."

In Webber v. City of Scottsbluff, 155 Neb. 48, 50 N. W. 2d 533, we held: "On appeal to the district court from the appraisement of damages, if other issues than the question of damages are involved, they must be presented by proper pleadings." Such rules have application here. The time and place for hearing and decision upon the question of whether or not plaintiffs timely filed an appeal bond was in the district court, which had judicial authority and jurisdiction to hear same as in an original action before the cause had been voluntarily tried and submitted to a jury upon the merits with regard to the amount of plaintiffs' damages. Under the

circumstances presented here, defendant has waived and is now estopped as a matter of law to deny that the appraisers' report of assessment was filed on October 19, 1949, the very fact upon which jurisdiction of plaintiffs' appeal on the merits depended.

As stated in 31 C. J. S., Estoppel, § 107, p. 341: "The doctrine classified as quasi estoppel has its basis in election, ratification, affirmance, acquiescence, or acceptance of benefits, and the principle precludes a party from asserting, to another's disadvantage, a right inconsistent with a position previously taken by him. The doctrine applies where it would be unconscionable to allow a person to maintain a position inconsistent with one in which he acquiesced, or of which he accepted a benefit."

In that regard, as held in Brisbin v. E. L. Oliver Lodge No. 335, 134 Neb. 517, 279 N. W. 277: " 'Estoppel means the preclusion of a person from asserting a fact, by previous conduct inconsistent therewith, on his own part or the part of those under whom he claims, or by an adjudication upon his rights which he cannot be allowed to call in question.' Graham Ice Cream Co. v. Petros, 127 Neb. 172, 254 N. W. 869."

In 4 C. J. S., Appeal and Error, § 44, p. 126, it is said: "As jurisdiction cannot be conferred on an appellate court by consent of the parties, want of jurisdiction cannot be waived by them, but may be taken advantage of at any time, and jurisdiction cannot be supplied by estoppel or laches. The parties, however, may be estopped to deny the existence of facts upon which jurisdiction depends, * * *."

As stated in 30 C. J. S., Eminent Domain, § 346, p. 26: "Jurisdiction of an eminent domain proceeding cannot ordinarily be conferred on an appellate court by consent, waiver, or estoppel. Where, however, a party invokes the right of appeal to a particular court, he cannot later be heard to deny the existence of such right; nor may a party who participates in the trial of an appeal without objection be later heard to say that

no valid appeal had been taken and that the court was without jurisdiction to hear and determine the controversy. Where an appeal is taken to a court having original, as well as appellate, jurisdiction of the subject matter, the consent of the parties may vest the court with full and complete jurisdiction." See, also, Farmers Irrigation Dist. v. Calkins, 104 Neb. 196, 176 N. W. 367; Webber v. City of Scottsbluff, *supra*; Hulett v. Snook, 57 N. D. 338, 221 N. W. 879; Simons v. Mason City & Fort Dodge R. R. Co., 128 Iowa 139, 103 N. W. 129.

Also, as stated in 31 C. J. S., Estoppel, § 118, p. 380: "A party who has taken a position with regard to procedure, which has been acted or relied on by his adversary or by the court, is estopped from taking an inconsistent position respecting the same matter, in the same proceeding, to his adversary's prejudice."

In the case at bar defendant did, on January 12, 1950, some 2 years before the trial on the merits, file a motion to dismiss for want of jurisdiction. However, it was never presented to the trial court for decision thereon in any form until after defendant, assuming that the district court had jurisdiction as heretofore recited, consented to a trial on the merits, and had taken the chance of a favorable verdict to the prejudice of plaintiffs in a case wherein the certified transcript and the record on the merits in the district court affirmatively disclosed that the appraisers' report was filed on October 19, 1949, and plaintiffs' appeal bond had been timely filed thereafter on November 15, 1949. In such respect, defendant's motion to dismiss for want of jurisdiction in the district court should have been heard and decided in that court before defendant consented to and took the chance of a trial on the merits. Any other method of procedure would be contrary to law and permit the perpetration of a grave injustice.

Contrary to plaintiffs' contention, however, the assignments of error presented by defendant upon appeal with regard to the trial on the merits involving the issue of

plaintiffs' damages are here for determination. This is true because the issue of plaintiffs' damages was the only subject matter jurisdictionally presented on appeal in the district court, and defendant timely filed a notice of appeal of the case to this court and paid the docket fee to the clerk of the district court.

In that connection, defendant argued that the trial court erred prejudicially in admitting oral testimony of damages to defendant's transmission line caused by lightning about 2 years after the filing of defendant's condemnation petition and construction of its transmission line, and erroneously admitted as exhibits splinters from poles caused by such damage. In Platte Valley Public Power & Irr. Dist. v. Armstrong, 159 Neb. 609, 68 N. W. 2d 200, cited with approval in City of Lincoln v. Marshall, 161 Neb. 680, 74 N. W. 2d 470, we held: "The market value of lands taken by eminent domain proceedings, together with damages, if any, to other remaining lands by severance, are computable as of the time of the taking, which is deemed to occur when the petition for condemnation is filed." The petition for condemnation herein was filed September 6, 1949.

As stated in In re Platte Valley Public Power & Irr. Dist., 137 Neb. 313, 289 N. W. 383: "It necessarily follows that the evidence as to the value of the land taken and damaged by the condemnation proceedings must be based upon its value in the condition in which it was at the time of the condemnation."

It thus requires no extended argument to demonstrate that evidence of what damages occurred to defendant's transmission line by lightning 2 years after the date of the condemnation and construction of the transmission line was erroneously admitted. However, the record discloses that no objection whatever was made by defendant to the oral testimony adduced by plaintiffs which meticulously and graphically described the damages by lightning to each of several poles in defendant's transmission line and the splinter exhibits

taken by plaintiffs therefrom. Defendant did object when such splinter exhibits were offered in evidence, and its objections were overruled. However, the jury evidently had theretofore without objection had opportunity to clearly and fully observe such exhibits in court and hear the graphic description thereof. While the testimony and the evidence about which defendant complains was erroneously admitted, defendant, without having timely and properly objected thereto, is in no position here to complain.

Defendant also argued that the trial court, over appropriate objections timely made by defendant, erred prejudicially in admitting in evidence a 2-page pictorial spread appearing in Life Magazine on September 17, 1951, which showed numerous cattle sprawled dead along a line fence. The photograph appearing in the article was illustrated by an explanatory statement at the top thereof which used the following language: "Electrocuted cattle lie stretched along a fence. Near San Antonio, Texas a 2,000-volt power line snapped and fell on a pasture fence. Grazing innocently near the charged barbed wire, cattle came up one by one, touched it and were electrocuted. Two bulls, 22 cows died, leaving 14 orphaned calves to be bottle-fed by disconsolate owners." We sustain defendant's contention. In such respect, plaintiffs attempted to limit their offer of the article, but the offer was made without appropriate limitation, and the exhibit was in fact received in evidence without any limitation by the court. It was inadmissible in any event.

As recently as Higgins v. Loup River Public Power Dist., 159 Neb. 549, 68 N. W. 2d 170, we affirmed that: "The proof in a trial of a jury case must be confined to legal evidence tending to prove or disprove an issue made by the pleadings and the admission of improper evidence is prejudicial if it may have influenced the verdict.

"If it does not appear from the record that evidence wrongfully admitted in the trial of a jury case did not

affect the result of a trial unfavorably to the party against whom it was admitted its reception must be considered prejudicial error." Such rules are controlling here. We conclude that admission of the Life Magazine exhibit was a flagrantly prejudicial error which requires reversal of the judgment rendered on the verdict and remand of the cause for new trial upon the merits solely with regard to the amount of plaintiffs' damages.

Citing Papke v. City of Omaha, 152 Neb. 491, 41 N. W. 2d 751, defendant argued that instruction No. 1 given by the trial court was prejudicially erroneous because it commented on the insufficiency of the award of the appraisers by stating among other things that: "The appraisers filed their report fixing the damages to the land. The plaintiff, Virgil Lane, not being satisfied with said amount so allowed, appeals to this Court for determination by jury of the amount to which he is entitled from said Burt County Power District, defendant." In that respect, we have examined the entire instruction and all others given, none of which stated the amount of the appraisers' award. Further, no evidence with relation thereto was adduced before the jury. The effect of the instruction, when considered with all others given, was simply to tell the jury the nature and purpose of the trial and to identify the parties as plaintiffs and defendant. The instruction could not have been prejudicial to defendant.

Defendant also argued that the trial court erred prejudicially by failing in any instruction to fix the time of ascertaining the damages as the time of filing defendant's condemnation petition. In that regard, instruction No. 7 given by the trial court told the jury, among other things not material here, that the measure of plaintiffs' damages was the market value of the small amount of land actually taken by defendant plus the difference if any between the fair market value of plaintiffs' remaining land immediately before the taking by defendant of the right-of-way and easement, and the market value

thereof immediately thereafter. No instruction specifically told the jury that the taking was on September 6, 1949. However, in such respect four witnesses without objection testified to the value of plaintiffs' farm in October 1949, immediately before the condemnation, and its lesser value immediately thereafter.

As early as Northeastern Nebraska R. R. Co. v. Frazier, 25 Neb. 53, 40 N. W. 609, cited with approval in Platte Valley Public Power & Irr. Dist. v. Armstrong, *supra,* this court said: "The time of filing the petition is to be taken as the period when the damages are to be determined. This, however, we do not understand to be limited to any particular day. The estimate is to be made at about that time. If there is a fluctuation in value, it may be shown, but testimony as to the value a short time after the appropriation is admissible, and in the absence of any proof showing an increase or diminution in value after the appropriation, a jury would be warranted in finding that the same values had existed at the time of the appropriation."

We conclude that while the trial court should have instructed the jury that the time of taking was September 6, 1949, its failure to do so under the circumstances presented here was not prejudicially erroneous.

Defendant also argued that part of instruction No. 5 given by the trial court was prejudicially erroneous in that it placed too great an emphasis upon the element of fear in considering what might lessen the market value of plaintiffs' land. The instruction is of such length that to recite it here would serve no useful purpose. In Wahlgren v. Loup River Public Power Dist., 139 Neb. 489, 297 N. W. 833, quoting with approval from McGinley v. Platte Valley Public Power & Irr. Dist., 133 Neb. 420, 275 N. W. 593, and Dunlap v. Loup River Public Power Dist., 136 Neb. 11, 284 N. W. 742, 124 A. L. R. 400, this court stated and reaffirmed simple and correct rules with relation to the element of fear in condemnation cases such as that at bar. In doing so we held that: "General

fear, or fear which is not connected with or an incident of knowledge of present or potential danger, cannot be made the basis upon which to predicate depreciation in the market value of land.

"The only fear which may be considered as an element in fixing value is that of danger, the present or potential existence of which is grounded in authentic observation and experience, or in scientific investigation, and which fear circumscribes activity or limits freedom of use in the area of the present or potential danger, and which tends to lessen the market value of the land."

In the light thereof, it is sufficient for us to say that the portion of instruction No. 5 about which defendant complained was in accord with such rules. Thus it was not prejudicially erroneous.

The trial court in its instructions made no mention of the question of interest upon damages to be awarded plaintiffs. The jury was specifically told that the measure of plaintiffs' damages was as heretofore set forth in instruction No. 7, without any mention of the item of interest in that or any other instruction. However, the question of interest was not called to the attention of the jury in any manner disclosed by this record, and the trial court in its judgment rendered on the verdict added interest thereto. In that situation, defendant argued that the trial court erred prejudicially in failing to instruct the jury that the court reserved to itself the question of interest and not to include any interest in its verdict.

In Webber v. City of Scottsbluff, 150 Neb. 446, 35 N. W. 2d 110, we reaffirmed that: "The proper procedure in a condemnation action, where an appeal is taken from the award and the case is tried to a jury in the district court, is for the court to reserve the question of interest for its determination and direct the jury not to include it in its verdict." See, also, Langdon v. Loup River Public Power Dist., 144 Neb. 325, 13 N. W. 2d 168; Papke v. City of Omaha, *supra*.

In the case at bar, the trial court did erroneously fail to instruct the jury, but we cannot under the circumstances presented here, and without any competent affirmative showing with regard thereto, assume that the jury disregarded the court's specific and definite instructions upon the measure of damages and allowed interest in its verdict. In other words, we conclude that under the circumstances presented here the failure of the trial court to specifically reserve to itself the question of interest was not prejudicial error.

For reasons heretofore stated, we conclude that such portion of the judgment of the trial court as refused to dismiss plaintiffs' appeal and terminate the litigation for failure of plaintiffs to timely file an appeal bond, should be and hereby is affirmed, with all costs of such related proceedings in the county court and district court taxed to defendant. However, the judgment on the merits should be and hereby is reversed and the cause is remanded for new trial solely upon the merits of plaintiffs' claim for damages. All costs in the trial upon the merits in the district court and on appeal thereof to this court are taxed to plaintiffs.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.