ORLEANS EDUCATION ASSOCIATION, AN UNINCORPORATION ASSOCIATION, APPELLEE, V. THE SCHOOL DISTRICT OF ORLEANS, IN THE COUNTY OF HARLAN, IN THE STATE OF NEBRASKA, ALSO KNOWN AS SCHOOL DISTRICT NO. R-3 OF HARLAN COUNTY, NEBRASKA, ALSO KNOWN AS THE ORLEANS PUBLIC SCHOOLS, A POLITICAL SUBDIVISION, APPELLANT.

229 N. W. 2d 172

Filed May 8, 1975. No. 39658.

Person, Dier & Person and Thomas J. Monaghan, for appellant.

Theodore L. Kessner of Crosby, Guenzel, Davis, Kessner & Kuester, for appellee.

Heard before WHITE, C. J., BOSLAUGH, NEWTON, CLINTON, and BRODKEY, JJ., HASTINGS, District Judge, and KUNS, Retired District Judge.

CLINTON, J.

This is an appeal from an order of the Court of Industrial Relations by which it set the rate of pay and certain other benefits for teachers employed by the de-

fendant, School District of Orleans, and by which it denied other relief prayed for by the plaintiff, Orleans Education Association, on behalf of its members. The school district appeals to this court pursuant to the provisions of section 48-812, R. R. S. 1943, and on appeal makes the following claims: (1) The plaintiff has no standing to sue because it had not, prior to suit, exhausted the remedies available to it under the Nebraska Teachers' Professional Negotiations Act, section 79-1287 et seq., R. R. S. 1943. This contention is founded upon the fact that before negotiation the plaintiff had not complied with the provisions of section 25-314, R. R. S. 1943. (2) The Nebraska Teachers' Professional Negotiations Act and section 48-818, R. R. S. 1943, are unconstitutional because they delegate legislative authority to an administrative agency in violation of Article II, section 1, of the Nebraska Constitution, pertaining to the separation of powers, and delegate the authority to tax to an administrative agency contrary to the requirements of Article VIII, section 1, of the Nebraska Constitution. (3) The Nebraska Teachers' Professional Negotiations Act is unconstitutional because it delegates legislative power to an administrative agency without providing sufficiently definite standards to guide the exercise of that power in violation of Article II, section 1, and Article III, section 1, of the Nebraska Constitution. (4) Section 48-818, R. R. S. 1943, is amendatory of section 79-810, R. R. S. 1943, and since it makes no mention of the amended statute it violates the requirements of Article III, section 14, of the Nebraska Constitution, and is unconstitutional. This contention is founded upon the premise that section 48-818, R. R. S. 1943, which authorizes the Court of Industrial Relations to set pay rates, in effect transfers budget-making authority from the school district, as provided by section 79-810, R. R. S. 1943, to the Court of Industrial Relations. (5) The order prescribing the rate of pay and other benefits is not sustained by the evidence.

The first assignment may be dealt with rather summarily. The defendant argues that since the plaintiff had not complied with section 25-314, R. R. S. 1943, which requires the filing with the Secretary of State of a certificate naming a resident agent before the unincorporated agency is authorized to do business, its attempt to negotiate and the rejection of that attempt by the school district were legally nugatory. Plaintiff did, however, file the certificate before this action was commenced but after the school district had refused to recognize the plaintiff as the negotiating agent for its members. The record establishes that the defendant's refusal to recognize the plaintiff as negotiating agent was not grounded on plaintiff's noncompliance with section 25-314, R. R. S. 1943. The defendant gave two specific reasons for its refusal to recognize the plaintiff. Neither reason was related to plaintiff's compliance with section 25-314, R. R. S. 1943. The reasons were such that it is clear defendant would not have recognized the plaintiff even if it had been in compliance with section 25-314, R. R. S. 1943. The defendant school district cannot be heard to say at this late date that it would have recognized the plaintiff had there been compliance with the statute in question. The record indicates otherwise. When a party gives a reason for his conduct and decision touching anything involved in a controversy, he cannot, after litigation has begun, change his ground and put his conduct upon another and different consideration. Boettcher v. Goethe, 165 Neb. 363, 85 N. W. 2d 884. The following principle also seems applicable: A party who has taken a position with regard to procedure, which has been acted or relied upon by his adversary or the court, is estopped from taking an inconsistent position respecting the same matter in the same proceeding to his adversary's prejudice. Lane v. Burt County Rural Public Power Dist., 163 Neb. 1, 77 N. W. 2d 773.

The next three assignments are somewhat interrelated and will be considered together. Does the Ne-

braska Teachers' Professional Negotiations Act and section 48-818, R. R. S. 1943, unconstitutionally delegate legislative power to an administrative body, the Court of Industrial Relations, contrary to Article II, section 1, of the Nebraska Constitution? If it does delegate such power, is the power limited by sufficiently definite legislative guidelines? Do these statutes delegate the power to tax to an administrative body contrary to Article VIII, section 1, of the Nebraska Constitution?

In raising these questions the defendant relies to a considerable degree upon the dissenting opinions in School Dist. of Seward Education Assn. v. School Dist. of Seward, 188 Neb. 772, 199 N. W. 2d 752, which dissents noted questions not raised by the parties in that case and therefore not directly dealt with in the majority opinion. We must accordingly examine the merits of the issues raised in the dissenting opinions.

Article II, section 1, of the Nebraska Constitution, is as follows: "The powers of the government of this state are divided into three distinct departments, the Legislative, Executive and Judicial, and no person or collection of persons being one of these departments, shall exercise any power properly belonging to either of the others, except as hereinafter expressly directed or permitted."

Article III, section 1, of the Nebraska Constitution, insofar as it is necessary to quote it, states: ". . . the legislative authority of the state shall be vested in a Legislature consisting of one chamber."

Article VIII, section 1, of the Nebraska Constitution, reads in part as follows: "The necessary revenue of the state and its governmental subdivisions shall be raised by taxation in such manner as the Legislature may direct."

Under the provisions of our Constitution the Legislature is authorized to delegate taxing power to municipal corporations. Art. VIII, § 6, Nebraska Constitution.

It is necessary to ask ourselves just what authority

the statute in question delegates and whether the above constitutional provisions are violated in some manner not determined either expressly or by necessary implication by our opinion in School Dist. of Seward Education Assn. v. School Dist. of Seward, *supra*. Most of the possible contentions are answered in the majority opinion in School Dist. of Seward Education Assn. v. School Dist. of Seward, *supra*. Only those claims raised by the minority of this court in the dissents and now relied upon by the defendant require consideration. Most of the members of this court who authored or joined in those dissents or indicated that the matters noted there might have merit if properly raised, now, after further consideration, believe otherwise.

The first claim is that Article XV, section 9, of the Nebraska Constitution, does not contemplate or authorize the creation of a body to deal with the labor relations of governmental entities. Judge Newton, in his dissent, pointed out reasons for so believing as did the writer of this opinion in his separate dissent. One may be willing to concede the validity of the contention that the amendment was intended to apply only to the regulation of public utilities. However, this does not answer the question of whether the Legislature otherwise has power to devise methods for dealing with the labor relations of governmental entities and departments. We conclude that the power of the Legislature to create a body with appropriate powers to deal with the labor relations of governmental entities is not, for reasons we develop later, dependent upon the grant of power given by Article XV, section 9, of the Nebraska Constitution. That proposition is implicitly recognized in the majority opinion in the Seward case as well as in the two dissents. The majority opinion, consistently with a well-recognized principle, stated: "The Legislature has plenary power and control over school districts, including provision for the appointment or election of governing bodies thereof. Consequently, it may provide limitations on any author-

ity to be exercised by a school board. If the Legislature has such complete control over public school districts, it follows, by the enactment of L.B. 15, Laws 1969, chapter 407, page 1405, it was exercising that control." The act referred to in that statement is the act by which section 48-810, R. R. S. 1943, was amended to require the exhaustion of the provisions of the Nebraska Teachers' Professional Negotiations Act as a condition precedent to invocation of jurisdiction of the Court of Industrial Relations in cases involving persons and activities subject to the provisions of the Nebraska Teachers' Professional Negotiations Act. In his dissent Judge Newton said: "Public or governmental business has never been a subject of the police power. Such an exercise of power is unnecessary because this type of business is subject to direct legislative control at all times and in all respects without resort to the extraordinary remedy provided by the police power." That dissent then goes on to note that Article XV, section 9, does not authorize the legislation in question. The writer of this opinion in his dissent said: "There would, however, seem to be no question that the Legislature may enact independently of Article XV, section 9, labor legislation applicable to public employees, but in so doing the provisions of Article II on the separation of powers must be observed." The latter statement, implying that the separation of powers provision of the Constitution or Article V, section 1, granting judicial power to the courts was somehow violated, is, I now believe, clearly mistaken.

The Legislature has plenary legislative authority except as limited by the state and federal Constitutions. Dwyer v. Omaha-Douglas Public Building Commission, 188 Neb. 30, 195 N. W. 2d 236. Collective bargaining and the rights and remedies which arise therefrom are wholly the creation of legislative power, state and federal, and are of relatively recent origin. Mabry, Labor Relations and Collective Bargaining, p. 147. This court has stated many times that the method of creation of governmental

subdivisions, the grant of their powers, and the manner of their exercise is almost wholly within the legislative sphere. Dwyer v. Omaha-Douglas Public Building Commission, *supra*. The same is, of course, true of school districts. School Dist. of Seward Education Assn. v. School Dist. of Seward, *supra*. It is clear that the Legislature did not need to look to the authority of Article XV, section 9, of the Nebraska Constitution, when it entrusted to the Court of Industrial Relations authority pertaining to labor relations of governmental services. It has that authority by virtue of Article III, section 1.

The next question to be answered is whether there is any merit to the contention that section 48-818, R. R. S. 1943, is void because it delegates legislative power to an administrative agency without prescribing adequate guidelines governing the exercise of that power. The contention itself contains the assumption that the type of legislative delegation here being considered requires the statutory statement of guidelines to make it valid. The validity of that assumption requires examination. The rule is usually stated in this way: "In the grant of power to an administrative agency to legislate, such power must be limited to the expressed purpose and administered in accordance with standards prescribed in the legislative act." Terry Carpenter, Inc. v. Nebraska Liquor Control Com., 175 Neb. 26, 120 N. W. 2d 374. We have, however, stated it differently. In Lincoln Dairy Co. v. Finigan, 170 Neb. 777, 104 N. W. 2d 227, we said: "The exercise of a legislatively-delegated authority to make rules and regulations to carry out an expressed legislative purpose, or for the complete operation and enforcement of a law with designated limitations and standards, is not an exercise of legislative power. It is administrative in its nature and its use by administrative agencies is usually essential to the complete and wise exercise of the power in the accomplishment of the purpose which the Legislature intended." In both of those cases the power being delegated was rule-making power

having the force of law and for the violation of which penalties could be imposed. It is usually said that matters such as setting compensation of governmental employees and the conditions of their employment is, generally speaking, a legislative power. 67 C. J. S., Officers, § 93(2), p. 336. Setting such compensation is not, however, such a purely legislative power that its valid delegation, in the absence of some specific constitutional requirement, requires the strict standards applicable to the delegation to administrative bodies of the power to make rules and regulations which have the effect of law and for the violation of which penalties are imposed. 16 C. J. S., Constitutional Law, § 138(b), p. 621, see text accompanying note 20. The governing boards of school districts are not legislative bodies, yet we know that historically they have been delegated, without prescription of any standard whatever, the authority to hire administrators and teachers and to fix their salaries. Similar delegations of authority are made by the Legislature to various governmental entities as well as to the other two coordinate branches of government.

The labor relations legislation we are here considering goes further, of course, than the mere setting of salaries of teachers. That act has a much broader public purpose which is set forth in section 48-802, R. R. S. 1943. When the legislative delegation is of this type, it is usually held that the statement of standards is required. 16 C. J. S., Constitutional Law, § 138, notes 99.5, 99.10, 99.15, pp. 629, 630.

Section 48-818, R. R. S. 1943, provides in part as follows: "In making such findings and order or orders, the Court of Industrial Relations shall establish rates of pay and conditions of employment which are comparable to the prevalent wage rates paid and conditions of employment maintained for the same or similar work of workers exhibiting like or similar skills under the same or similar working conditions. In establishing wage rates the court shall take into consideration the overall

compensation presently received by the employees, having regard not only to wages for time actually worked but also to wages for time not worked, including vacations, holidays, and other excused time, and all benefits received, including insurance and pensions, and the continuity and stability of employment enjoyed by the employees." In cases involving the validity of the delegation of power to settle labor relations disputes, it has been held: " 'It is only necessary that the statute establish a sufficient basic standard—a definite and certain policy and rule of action for the guidance of the agency created to administer the law.' " State ex rel. Van Riper v. Traffic Tel. Workers' Federation, 2 N. J. 335, 66 A. 2d 616, 9 A. L. R. 2d 854. See, also Fairview Hospital Assn. v. Public Building Service Union, 241 Minn 523, 64 N. W. 2d 16. In the first-cited case, the New Jersey court held that the statute was unconstitutional because no standards at all were prescribed. However, it pointed to the statutes of a number of other states as containing standards apparently sufficient. One of the statutes referred to was "Nebraska Laws 1947, Bill 537, Chapter 178, § 18." This is section 48-818, R. R. S. 1943. In the second-cited case, the Minnesota court held the statute of that state to be constitutional. The statutory standards prescribed in the Minnesota act were far less precise than those contained in section 48-818, R. R. S. 1943. In Pittsburgh Plate Glass Co. v. National Labor Relations Board, 313 U. S. 146, 61 S. Ct. 908, 85 L. Ed. 1251, the United States Supreme Court held that section 9 (b) of the National Labor Relations Act, which provides that the board "shall decide in each case whether, in order to insure the employees the full benefit of their right to self-organization and to collective bargaining, and otherwise to effectuate the policies of this Act, the unit appropriate for the purpose of collective bargaining shall be the employer unit, craft unit, plant unit, or subdivision thereof," supplies adequate standards for administrative action and does not unconstitutionally dele-

gate legislative power. We hold that the standard contained in section 48-818, R. R. S. 1943, is clearly sufficient and the statute is constitutional.

This court pointed out in School Dist. of Seward Education Assn. v. School Dist. of Seward, *supra,* that the act creating the Court of Industrial Relations grants that body a combination of administrative, legislative, and judicial powers. Those granted by section 48-818, R. R. S. 1943, require the receipt of evidence and the determination of facts. Such powers are quasi-judicial. The contention that the statute violates the constitutional prohibition against the delegation of judicial authority to nonjudicial bodies, however, is not well founded because, as we held in School Dist. of Seward Education Assn. v. School Dist. of Seward, *supra,* the Court of Industrial Relations is an administrative body. The function it exercises is a legislative one; its quasi-judicial powers are purely incidental.

The act creating the Court of Industrial Relations creates rights and jurisdiction unknown at common law. Mabry, op. cit. It does not take from any court jurisdiction granted to it by the Constitution, Art. V, § 1, Nebraska Constitution, which, of course, the Legislature could not constitutionally do. State ex rel. Wright v. Barney, 133 Neb. 676, 276 N. W. 676. The authority of the Court of Industrial Relations is carefully circumscribed. Its procedures are prescribed by statute. The rules of civil procedure apply. § 48-812, R. R. S. 1943. It follows the rules of evidence applicable in the District Court. § 48-809, R. R. S. 1943. Its jurisdiction is clearly defined and is limited to what are clearly legislative concerns. §§ 48-801(7), 48-810, R. R. S. 1943. The Court of Industrial Relations cannot enforce its own orders. That is left to the District Court and to this court. §§ 48-812, 48-819, R. R. S. 1943. Section 48-818, R. R. S. 1943, does not delegate judicial powers to an administrative body in violation of Article II, section 1, or Article V, section 1, of the Nebraska Constitution.

We now turn to the contention that section 48-818, R. R. S. 1943, delegates to the Court of Industrial Relations the authority to tax. It is patent that the statute does not grant to that court the authority to levy or assess a tax. The defendant's argument is that the order setting salaries and other benefits affect the power of the school district to determine its own budget under section 79-810, R. R. S. 1943, and this is the legal equivalent of taxing authority. It cannot be denied that the orders of the court ultimately have budgetary and tax effects, but is this the equivalent of a delegation of the legislative taxing power? It is patent that if such delegation constitutes the power to tax within the meaning of the Constitution, then there would, as a practical matter, be no way legislation of this type could be effectively implemented for it is obviously impossible for the Legislature to perform this task itself.

The defendant relies primarily upon implications from the opinion of this court in Carlberg v. Metcalfe, 120 Neb. 481, 234 N. W. 87. In that case the Legislature authorized the creation of a municipal university in cities of the metropolitan class when approved by a vote of the people. The act delegated to the governing body of the city the duty to levy the necessary tax. The act gave the board of regents of the municipal university the power to certify to the city council the amount of money necessary to run the university. It was argued in that case that the power granted the regents was an unconstitutional delegation to them of the power to tax. The opinion does not indicate what, if any, control the city council had over the budget, or whether the council could determine the amount of the levy, and hence restrict the budget power of the regents. The court skirted answering the question directly and cited authorities for the proposition that: " 'Of course, if the people of a local district have in any way consented to the delegation . . ., they cannot contest the validity of the delegation of power.' " The defendant argues that the Carl-

berg opinion clearly implied that the power given to the regents to determine the budget was unconstitutional. Even if that is the implication of the holding, it does not apply here.

The defendant cites no cases directly in point. We find several sources which lead us to the conclusion that the defendant's contention is not well taken. In Anderson v. Tiemann, 182 Neb. 393, 155 N. W. 2d 322, it was contended that the authority delegated to the State Board of Equalization and Assessment to set tax rates, and to the Tax Commissioner to adopt rules and regulations was an illegal delegation of the taxing power and legislative authority. In that case we said: "The plaintiffs' contentions with respect to unconstitutional delegation of legislative power extend also to the provisions of L.B. 377 which require the State Board of Equalization and Assessment to set the rate of tax on or before November 15 of each year for the taxable year beginning during the subsequent calendar year. Section 15 of L.B. 377, in at least five subsections, explicitly sets out the computations to be made by the state board, the method and manner in which the computations shall be adjusted and determined, and the specific standards to be used in setting the rate of tax. The discussion as to delegation of legislative authority to the Tax Commissioner and the rules set out above also apply with respect to the delegation of authority to the State Board of Equalization and Assessment. L.B. 377 constitutes a valid and lawful delegation of authority to the State Board of Equalization and Assessment and does not violate the Constitution of Nebraska nor the United States." The rationale relied upon in Anderson v. Tiemann, *supra,* may be stated in the following excerpts from that opinion and they are applicable here: " 'The exercise of a legislatively-delegated authority to make rules to carry out an expressed legislative purpose, or for the complete operation and enforcement of a law with designated limitations is not an exclusive legislative power. It is

administrative in its nature and its use by administrative agencies is usually essential to the complete and wise exercise of the power in the accomplishment of the purpose which the Legislature intended. Consequently, the courts are not inclined to interfere with rules established by legislative direction where they bear a reasonable relation to the subject of the legislation and constitute a reasonable exercise of the powers conferred.'" Citing Board of Regents v. County of Lancaster, 154 Neb. 398, 48 N. W. 2d 221. "Delegation of legislative power is most commonly indicated where the relations to be regulated are highly technical or where regulation requires a course of continuous decision."

Many administrative functions affect in greater or lesser degree the budget-making or taxing power but are not held to be invalid delegations. In Wilkinson v. Lord, 85 Neb. 136, 122 N. W. 699, a statute, directing the county superintendent to furnish to the county clerk the data to make a free high school levy when the school refused to do so, was held not to be a violation of Article IX, section 6, of the Nebraska Constitution (the predecessor of Article VIII, section 6). Other examples of valid delegation of authority which affect the taxing power, but not unconstitutionally so, are found elsewhere. See, 16 C. J. S., Constitutional Law, § 138 (16), (17), (20), p. 614 et seq. (determining the amount and validity of claims against the government, issuance of bonds by the administrative authority, and setting salaries of public employees); Sommers v. Patton, 399 Ill. 540, 78 N. E. 2d 313 (statute authorizing trustees of a pension fund to certify to the taxing authority the amounts estimated to be required for the fund to meet its obligations).

The contention that the act establishing the Court of Industrial Relations amends section 79-810, R. R. S. 1943, and hence violates Article III, section 14, of the Nebraska Constitution, is wholly without merit.

The assignment that the findings of the Court of Industrial Relations are not supported by the evidence is

nowhere discussed or argued in the brief. We therefore take no note of it. See Rule 8 a 2 (3), Revised Rules of the Supreme Court, 1974.

AFFIRMED.

BOSLAUGH, J., concurs in the result.

NEWTON, J., dissenting.

I find it necessary to disagree with the opinion of Clinton, J. In the case of School Dist. of Seward Education Assn. v. School Dist. of Seward, 188 Neb. 772, 199 N. W. 2d 752, the question of the constitutionality of the act creating and defining the powers of the Court of Industrial Relations was not raised by the parties and the majority opinion ignored that question. For the first time we are now obliged to meet the constitutional questions.

I will not reiterate my dissent in the Seward case. It will suffice to point out that the Constitutional Convention of 1920 in adopting Article XV, section 9, Constitution of Nebraska, clearly intended to exempt the state and its political subdivisions from the operations of the Court of Industrial Relations. The Constitution is restrictive and whenever a constitutional provision is adopted dealing with legislative powers, it is evidence that it is intended to restrict the broad plenary powers vested in the Legislature. Otherwise it would be meaningless. I agree with Judge Clinton that the Legislature already had the authority to create an industrial commission prior to the adoption of Article XV, § 9. Why then was it adopted? Why was authority over state and political subdivisions deleted? His opinion defeats the clear will of the people of Nebraska.

Constitution must not be given a construction which will defeat obvious will of people. State ex rel. Hennepin County Bar Assn. v. Amdahl, 264 Minn. 350, 119 N. W. 2d 169.

With respect to constitutional interpretation, court should endeavor to place itself in position of framers of

constitution and ascertain what was meant at the time. * * *

Constitutional provision cannot mean one thing at time of its adoption and another thing subsequently when public sentiments have undergone change. Walber v. Wayne Circuit Judge, 2 Mich. App. 145, 138 N. W. 2d 772.

Intent of constitutional convention and people who ratified that which convention framed is primary guideline in construing constitution. White v. Anderson, 155 Colo. 291, 394 P. 2d 333.

"The Constitution should not be construed as to defeat the obvious intent of its framers, if another interpretation may be adopted equally in accordance with the words and sense which will carry out the intent. * * *

"In construing the Constitution, intent must be gathered from both the letter and the spirit of the document, and the polestar is the intention of the makers and adopters." Grantz v. Grauman (Ky. App.), 302 S. W. 2d 364.

A specific constitutional provision must be given effect as against a general clause. Ridgeway v. Catlett, 238 Ark. 323, 379 S. W. 2d 277.

The foregoing sets out a few well-recognized rules of constitutional interpretation and all are applicable to the present situation.

Another well-recognized rule should be considered. "The doctrine is established that legislative authority may be limited by constitutional restrictions which are impliedly imposed. Restrictions in a constitution as to legislation are equally effective whether they arise by implication or are stated in express terms; and such restrictions may be found either in the language employed or in the evident purpose which was in view and the circumstances and historical events which led to the enactment of the particular provision as a part of the organic law." 16 Am. Jur. 2d, Constitutional Law, § 230, p. 480.

It is apparent that the delegates to the Constitutional Convention of 1919-1920 intended that the state and its political subdivisions should not fall within the jurisdic-

tion of the Court of Industrial Relations. Under such circumstances there is definitely an implied restriction on the constitutional power of the Legislature to ignore the restriction so effected at the convention. It is true that the Legislature speaks for the people of the State of Nebraska but only within the confines of the state Constitution and in this instance, its power has been restricted at a constitutional convention which was likewise representative of the people of Nebraska and the constitutional provisions then framed were adopted by vote of the people of Nebraska. By what authority does the Legislature ignore such a situation?

This court apparently has undertaken a legislative or constitutional function on policy grounds.

CLINTON, J., respondente.

Judge Newton, in his dissent, accuses this court of undertaking a legislative or constitutional function on policy grounds. This assertion is so serious that it cannot go unanswered. No reason existed for elaborating in the majority opinion the fundamental nature of the power of the Legislature to enact laws beyond the statement of the general principle as set forth in Dwyer v. Omaha-Douglas Public Building Commission, *supra.*

Judge Newton cites and relies upon text authority, 16 Am. Jur. 2d, Constitutional Law, § 230, p. 480, in support of a doctrine of limitation by implication of the authority of the state Legislature to enact laws. An examination of the cases cited in the text footnotes reveals that they do not support the broad brush treatment which Judge Newton would apply and have no application at all to the particular question we are considering. The dissent fails to call attention to a portion of the text statement on which it relies and which omitted portion reads as follows: "Legislative power is deemed curtailed by implied limitations only in cases where it is clear that a construction of the constitutional provisions involved requires such restrictions. Restraints upon legislative powers are not to be lightly inferred.

The implied restriction must be one that is clearly implied." 16 Am. Jur. 2d, Constitutional Law, § 230, p. 481.

The dissent contends that, because the Constitution authorized the Legislature to create an industrial commission for the purpose of dealing with certain labor relations problems, that constitutional provision restricts the Legislature from ever after entrusting to that same commission, later created by it, authority to deal with, in such manner as the Legislature shall direct, the labor relations of governmental subdivisions. Such a construction is contrary to the fundamental nature of the state legislative power under our system of government. The position which the dissent takes is but an application of the maxim "expressio unius est exclusio alterius." That maxim has no application to the state legislative powers. The doctrine against restriction by implication of the legislative powers of state Legislatures rests upon a fundamental difference in the nature of the federal legislative power and that of the states. The federal Constitution is a grant of power. The state Constitutions are restrictions on powers. The state Legislatures have plenary legislative power except as is expressly denied them by the Constitutions or as is expressly reserved to the people themselves. In State ex rel. Meyer v. County of Lancaster, 173 Neb. 195, 113 N. W. 2d 63, Judge Spencer discusses this fundamental. In that case this court was called upon to construe the provisions of the constitutional amendment then recently adopted which authorized the Legislature to authorize counties and cities to issue revenue bonds for industrial development. Art. XV, § 16, Nebraska Constitution (repealed 1972). This article had been adopted by the voters to avoid the constitutional restriction against lending the credit of the state or its subdivisions to private persons or corporations. An earlier industrial development act had been declared unconstitutional by this court for that reason. Article XV, section 16, of the Nebraska Constitution, was in part as follows: "Sec. 16. Notwithstanding any other

provision in the Constitution, the Legislature may authorize any county, incorporated city or village, including cities operating under home rule charters, *to acquire, own, develop, and lease* real and personal property to manufacturing and industrial enterprises and to issue revenue bonds for the purpose of defraying the cost of acquiring and developing such property by construction, purchase, or otherwise." (Emphasis supplied.) When, pursuant to this constitutional amendment, the Legislature enacted the enabling statutes, it authorized the municipalities not only to "own, develop, and lease real . . . property," but also to sell the property acquired and owned. It was argued that the Legislature could not authorize the sale of the property by the municipality because the constitutional provision merely authorized the municipality to "own, develop, and lease." This contention was rejected by this court. Judge Spencer, writing for the court, said: "Contention No. 4 raises the point that the amendment did not specifically mention the power to sell, so that L.B. 159 exceeds the authority granted by the amendment. We should not lose sight of the fact that the Constitution is not a grant but rather is a restriction on legislative power, and the Legislature may legislate upon any subject not inhibited by the Constitution. Swanson v. State, 132 Neb. 82, 271 N. W. 264.

"We said in State v. Sheldon, 78 Neb. 552, 111 N. W. 372: 'In the construction of a governmental system upon the American plan, the broad outlines are furnished by the constitution, but all the details necessary to carry the powers of government into effect are provided by the action of the legislature. The provisions of the constitution, while in one sense creative, also limit and define the powers to be exercised by the various departments of the government; but, except so far as its authority is limited or defined by the constitution, the legislature of the state is as fully vested with governmental powers as the British parliament. See a discussion of this subject in State v. Nelson, 34 Neb. 169.'

"Certainly the right of the Legislature to grant the power of sale of property to a municipality has not been inhibited by the Constitution, and there is no merit to plaintiff's fourth contention."

In State ex rel. Sayre v. Moore, 40 Neb. 854, 59 N. W. 755, this court quoted from Cooley, Constitutional Limitations (4th Ed.), p. 210: "When a law of congress is assailed as void, we look into the national constitution to see if the grant of specified powers is broad enough to embrace it; but when a state law is attacked on the same ground, it is presumably valid in any case, and this presumption is a conclusive one, unless in the constitution of the United States, or of the state, we are unable to discover that it is prohibited. We look in the constitution of the United States for grants of legislative power, but in the constitution of the state to ascertain if any limitations have been imposed upon the complete powers with which the legislative department of the state is vested in its creation. . . . the state legislature has jurisdiction of all subjects on which its legislation is not prohibited. The law-making power of the state recognizes no restraints, and is bound by none, except such as are imposed by the constitution."

The principles we have enunciated above are generally followed. Particularly well-considered opinions include Earhart v. Frohmiller, 65 Ariz. 221, 178 P. 2d 436; and Penrod v. Crowley, 82 Idaho 511, 356 P. 2d 73.