REQUESTED BY: Dear Senator:
You have asked for our comments on a variety of questions relating to ground water, several of which have been historically perplexing. Apparently you are interested in obtaining a general legal background on ground water issues as you ask no specific questions concerning any particular bill.
For this reason, in addition to our following general analysis of the questions you have raised, we refer you to two sources: First, general background information on ground water laws and problems in Nebraska, along with recommendations, is contained in the Platte River Basin-Nebraska Level B Study (Missouri River Basin Commission, March 1975), and secondly, a legal study of the issues relating to ground water in this state is found in Harnsberger, 52 Neb. L.Rev. 179 (1973). The latter article contains many citations to other sources if you are interested in further inquiry.
You first ask about the interest an individual has in water underlying his land. We will assume for the present that you are referring to ground water as described in section46-635, R.R.S. 1943, and section 46-657(2), R.S.Supp., 1976, which define the term as `that water which occurs or moves, seeps, filters, or percolates through ground under the surface of the land.' In Olson v. City of Wahoo,124 Neb. 802, 248 N.W. 304 (1933), our court stated:
 ". . . [T]he owner of land is entitled to appropriate subterranean waters found under his land, but he cannot extract and appropriate them in excess of a reasonable and beneficial use upon the land which he owns, especially if such use is injurious to others who have substantial rights to the waters, and if the natural underground supply is insufficient for all owners, each is entitled to a reasonable proportion of the whole, and while a lesser number of states have adopted this rule, it is, in our opinion, supported by the better reasoning."
This proposition has apparently been adopted by our Supreme Court as the rule in this state by subsequent decisions. See, e.g., Luchsinger v. Loup River Public Power Dist.,140 Neb. 179, 299 N.W. 549 (1941); Metropolitan UtilitiesDist. of Omaha v. Merritt Beach Co., 179 Neb. 783,140 N.W.2d 626 (1966). (The latter case did not mention the apportionment in times of insufficient supply portion of the rule.) The above cited rule, however, may not apply to underground streams as noted in the Olson decision.
Under the Supreme Court decisions it is virtually impossible to ascertain with certainty the exact nature of the proprietary interest, if any, an individual has to water under his land. Generally, the water is not `owned' as one would own a parcel of real estate, but a right to use the water may be acquired. Whether an individual who actually withdraws ground water and applies it to a reasonable and beneficial use thereby acquires a vested property right requiring just compensation under Article I, Section 21, of the Nebraska Constitution when the use of the water is taken or restricted for a public purpose is a perplexing question. This is largely due to the fact that the Olson rule seems to be a hybrid of two other rules:
The American Rule and the California Correlative Rights Rule. Under the American Rule, a landowner can withdraw all the water beneath his land as long as it is applied to a beneficial and reasonable use of his land. The needs of other users or the amount of injury they sustain is irrelevant under this rule. The California Correlative Rights doctrine provides that each landowner has an equal and reciprocal right to apply ground water beneath his land to a beneficial use. The water is apportioned between the overlying landowners on the basis of their comparative reasonable needs when there is an insufficient supply. The former rule contemplates a proprietary interest while the latter does not. (See, Harnsberger, supra, at 204 through 210.) Thus, the individual's proprietary status under the Olson
rule remains a question mark. Whatever the nature of the individual's right under Nebraska case law, it is generally agreed that such right does not attach unless and until the individual actually withdraws the water and applies it to a reasonable beneficial use. (See, Harnsberger, supra, at 267.)
Aside from the murky issue of whether current users of ground water have a vested property right in that water, the Legislature has broad authority to regulate the use of ground water. It is a basic tenet of our form of government that the Legislature has plenary legislative authority except as otherwise limited by state or federal Constitutions.Orleans Education Association v. School Dist. of Orleans,193 Neb. 675, 229 N.W.2d 172 (1975). The general police powers of the state would provide a basis for such an exercise of legislative authority. The language in Olson referring to apportionment in times of insufficient water supply may also provide a basis for state regulation and restriction of the use of ground water in times of shortage. Likewise, the Legislature may define and regulate what uses are not reasonable and beneficial under the Olson rule and protect other water users from injurious uses by ground water users. In Metropolitan Utilities Dist. of Omaha v.Merritt Beach Co., supra, the court, recognizing the need for control and regulation of ground water, stated that it was `preserving the right of the Legislature, unimpaired, to determine the policy of the state as to underground waters and the rights of persons in their use.' This may indicate the court's view that the Legislature has virtually unfettered authority to define rights and regulate use in this area.
Your next question concerns the origin of the individual's and the state's respective rights to ground water. As noted above, the landowner's right to ground water has been defined and established by the courts. The state's authority stems in large part from its inherent police powers and its general grant of legislating authority under ArticleIII, Section 1, of the Nebraska Constitution. There are few constitutional or statutory provisions relating to ground water. Article XV, Section 4, of our Constitution states:
 "The necessity of water for domestic use and for irrigation purposes in the State of Nebraska is hereby declared to be a natural want."
This section applies to ground water but its meaning is unclear. At most, it may be argued that it merely implies that ground water `must be reasonably used for a beneficial purpose without waste.' See, Metropolitan Utilities Dist.of Omaha v. Merritt Beach Co., supra. No `rights' to the use of ground water by an individual have thus far been established by statute in this state other than a preference statute establishing a priority for domestic, agricultural and manufacturing or industrial uses. Section 46-613, R.R.S. 1943. The Legislature has, however, enacted some legislation enabling the state to regulate the spacing, location and registration of certain wells, a permit system for city ground water supplies, and a procedure for the natural resource districts and the state to establish control areas with powers to restrict or deny further use of ground water in times of insufficient water supplies. You may find these provisions in Article 6, Chapter 46, of the Revised Statutes of Nebraska, as amended to date.
You further inquire as to whether there is any ambiguity in the law on ground water in this state and if so, from whence it originates. As noted above, the questions of whether, under what circumstances and to what extent an individual may have a vested property right in the use of ground water which he applies to a beneficial and reasonable use remains unresolved. This may be relevant in the event the Legislature chooses to restrict these rights.
There are, of course, other areas of uncertainty such as the relative rights of ground water users compared to appropriators and riparians, but due to time and resource limitations it would be virtually impossible to provide you with a complete analysis of these problems in the reasonably near future. In any event, it is our policy to confine our comments to specific questions raised by particular provisions of proposed legislation.
You next inquire whether a change in the proprietary interest of the individual could be done statutorily or constitutionally. As noted above, the Legislature has full authority to regulate this area within constitutional limitations. A constitutional provision could also properly produce a change of this nature. Again, compensation may be required under Article I, Section 21, of the Constitution. Similarly, ground water could be dedicated to the public use either by statute or by constitutional amendment within existing constitutional limitations. What has been said in response to this question should not be construed to mean that any statute or constitutional amendment defining the rights of ground water users or regulating the use of such water will necessarily pass constitutional muster. We will address in more detail any specific questions you have concerning the legal problems involved in any particular piece of proposed legislation.
Your last question involving the comparative rights of individuals in the event of `state ownership in toto' is impossible to answer at this time since our response would depend entirely upon the provisions of law which established such state `ownership.' The comparative rights of individuals in such a situation would be a proper subject for the Legislature to address.